UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 21-cv-62301-BLOOM

SADIK BAXTER,

    Petitioner,
v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on Petitioner Sadik Baxter's Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. [23]. Petitioner challenges the constitutionality of his state convictions and sentences in case number 12-11455-CF-10A in the Seventeenth Judicial Circuit for Broward County. (*See generally id.*).

Respondent filed a Response to the Amended Petition, ECF No. [25], with an Appendix, ECF No. [9], including attached Exhibits, ECF Nos. [9-1]–[9-6], a Supplemental Appendix, ECF No. [26], including attached Exhibits, ECF No. [26-1], and a Notice of Filing Transcripts, ECF No. [10], including the attached plea hearing transcript, ECF No. [10-1], and trial and sentencing transcripts, ECF No. [10-2]. Petitioner thereafter filed a Reply, ECF No. [29]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Amended Petition is denied.

**I.    BACKGROUND**

On August 5, 2012, Petitioner was indicted on two counts of felony murder and four counts of burglary. *See* ECF No. [9-1] at 8–11. Petitioner pleaded guilty to the burglary charges and

agreed to the following factual basis stated by Mr. Ribas, the state prosecutor, during his change of plea hearing:

> MR. RIBAS: On August 5th of 2012, Mr. Oakley and Mr. Baxter were together in the morning hours, they were at the Hard Rock Casino or one of the local casinos, they had left and they agreed to go to this Rock Creek community neighborhood in Cooper City, in the area of 3700 Beach Way, B-E-A-C-H, within that neighborhood. At approximately 7:05 in the morning, Mr. and Mrs. Kantor, K-A-N-T-O-R, were coming back from the airport after dropping off a family member there, I think actually one of their sons. As they were coming back to their home, they saw an Infiniti in the area, which the evidence we believe shows was driven by Mr. Oakley.
>
> THE COURT: An Infiniti?
>
> MR. RIBAS: An Infiniti, yes, a vehicle, silver. They saw Mr. Baxter, they saw Mr. Baxter enter their vehicle, another vehicle they have, the Kantors, a GMC, it looked like he was rummaging through the vehicle, they immediately got on the phone and called 9-1-1. They also began to verbally confront Mr. Baxter. After Mr. Baxter saw the Kantors, he started walking away from their home and their vehicle. The Kantors followed in their vehicle, 'cause now he's on foot. The Infiniti at that point in time left the cul-de-sac area where the Kantors live. BSO arrived within minutes and arrested Mr. Baxter while he was on foot. The Kantors then saw the association between the Infiniti, the vehicle. Mr. Baxter saw it, pointed it out to the police, BSO then at that point in time tried to stop the vehicle inside of the neighborhood. The neighborhood, if you don't know your way in and out of that neighborhood, it could be hard to find an exit, there's a big loop around the neighborhood. In fact, they went around, "they" being the Infiniti driven by Mr. Oakley and BSO, two cars, twice, in two loops, around that neighborhood, which is around six miles. The Infiniti then, driven by Mr. Oakley, went into Stirling Road, to Palm Avenue, and when it got to Palm Avenue, the Infiniti, going at a minimum of 81 miles per hour, struck a vehicle, a Toyota, driven by Mr. and Mrs. Charlier, and Mr. Oakley then lost control of the vehicle, went further into the intersection, and struck two bicyclists, Mr. Amelkin and Mr. McConnell, who were riding their bikes that morning as part of their exercise regimen that they do with friends. There were two other friends just behind them that survived, so there's witnesses to what happened. Mr. Oakley fled on foot from that Infiniti. He was found at around 11:50 in the morning hiding in a local apartment area, in bushes, by K-9 officers from the Pembroke Pines Police Department.
>
> Within the Infiniti, your Honor, items that Mr. Baxter has pled to were found. Specifically, Mr. Russo, who is the victim of Count Seven, his drum equipment was found in the Infiniti. Mr. and Mrs. Stone, they're victims of Counts Eight and Nine. An iPad cover, which was just purchased, it was brand new, was found in the Infiniti, that's for Count Eight. Count Nine, Mr. Stone, I guess his son plays

> baseball, the baseball bag, with all the equipment, the stitching that it's his son, if you will, the family name, was also found within the Infiniti as well. The victim of Count Ten, Mrs. Marsh, she had some items missing from her car she believed, and one of her receipts, dry cleaning receipts, was actually found in the Infiniti with her name on it. The Kantors, which are the victims, as I indicated, of Six Count, they actually witnessed the burglary themselves of their own car, as Mr. Baxter was inside that car.
>
> Mr. Baxter did give a post-Miranda statement to law enforcement. There's an evolution in these statements, how they occur, but ultimately he admitted to his involvement in the burglaries and to being with Mr. Oakley, that they had agreed to commit burglaries, and he was caught.

ECF No. [10-1] at 22:5–25, 23:1–25, 24:1–25, 25:1–8. Petitioner proceeded to trial on the felony murder charges, and on May 15, 2014, he was convicted on both counts by a Broward County jury. *See* ECF No. [9-1] at 19–20. Petitioner was sentenced to life in prison. *See id*. at 22.

Petitioner appealed, and on February 9, 2017, the Fourth District Court of Appeal per curiam affirmed without a written opinion. *See Baxter v. State*, 229 So. 3d 1240 (Fla. 4d DCA 2017). On March 4, 2021, the Fourth District Court of Appeal per curiam affirmed the denial of Petitioner's Rule 3.850 motion. *See Baxter v. State*, 314 So. 3d 268 (Fla. 4d DCA 2021).

The instant Amended Petition was docketed on May 27, 2022. Therein, Petitioner raises 13 grounds for relief. *See generally* ECF No. [23].

## II.     LEGAL STANDARD

### A.     Deference under Section 2254

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d

600, 642 (11th Cir. 2016) (cleaned up). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (cleaned up).

Under the AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Rimmer v. Sec'y, Fla. Dep't of Corrs.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "*unreasonable* application of [clearly established] federal law is different from an *incorrect* application of federal law." *Id.* at 410. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas corpus relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335,

1351 (11th Cir. 2019) (citing *Harrington*, 562 U.S. at 100). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the decision to the last related state-court decision that does provide a rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (cleaned up). Deferential review under section 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

### B.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) he suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687–88.

To establish deficient performance, Petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690–91. The Court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000); quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013).

Regarding the prejudice component, the Supreme Court has explained that "[t]he [Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (alterations added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

### III.   DISCUSSION

#### A.   The Merits

##### i. Ground One

Petitioner asserts that "[t]he [t]rial [c]ourt erred in denying Petitioner's Motion to Dismiss and/or Motion for Judgment of Acquittal where Petitioner was under arrest, handcuffed, and in custody when his co-defendant fled by car and was ultimately involved in a fatal traffic accident." ECF No. [23] at 5. Petitioner raised this issue as Point I in his initial brief on direct appeal. *See* ECF No. [9-1] at 68. However, he did not argue that the trial court's alleged error violated his federal constitutional rights. *See id.* at 68–75.

It is well-settled that claims that are not based on a violation of the United States Constitution are not cognizable under federal habeas corpus review. *See* 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("It is established that [a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.") (cleaned up).

Federal habeas corpus review of a state law claim is therefore precluded if no federal constitutional violations are alleged. This limitation remains even if the petitioner couches a claim as a federal violation when it actually involves state law issues. *See Branan* v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which are merely couched in terms of equal protection and due process.") (cleaned up).

7

On appeal, Petitioner cited mainly to Florida state cases decided on Florida state-law grounds. *See* ECF No. [9-1] at 68–75. Petitioner also included a section examining "other jurisdictions" and cited to state cases from New York, Ohio, Pennsylvania, and Michigan. *Id.* at 73–75. However, no federal cases were cited, and Petitioner made no mention of federal law or the federal constitution—not even to broad provisions such as due process or equal protection. *See id*. at 68–75. Here, although Petitioner now claims the trial court's decision "was contrary to or involved an unreasonable application of clearly established Federal Law", ECF No. [23] at 5, the Court concludes this is merely an attempt to couch Ground One as a federal constitutional violation. *See Branan*, 861 F.2d at 1508. Simply put, deciding this claim would require the Court to decide state law issues surrounding the independent act doctrine under Florida law. Because Ground One requires reexamination of "state-court determinations on state-law questions", the claim is not cognizable on federal habeas review. *Estelle*, 502 U.S. at 67–68. Ground One is thus denied.

### ii. Ground Two

Petitioner asserts an Eighth Amendment violation and states that "[t]he [t]rial [c]ourt erred in refusing to find that [Petitioner's] mandatory life sentences for first degree murder were unconstitutional as applied to him where he was under arrest and in custody when his co-defendant fled in a vehicle and ultimately caused the death of two bystanders." ECF No. [23] at 8. Petitioner raised this issue on direct appeal and the Fourth District per curiam affirmed Petitioner's sentence. *See Baxter v. State*, 229 So. 3d 1240 (Fla. 4d DCA 2017).

The parties agree that life sentences were statutorily mandated for the two felony murders in this case. *See* ECF No. [23] at 8–9; ECF No. [25] at 33–34. They also agree that Petitioner was already under arrest when his co-defendant fled the scene—resulting in the death of two bicyclists.

*See id.* "Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm*, 463 U.S. 277, 290 (1983). The Court agrees that the life sentences in this case were harsh. However, applying the "highly deferential standard" required by the AEDPA, *Renico*, 559 U.S. at 773, the Court denies Ground Two but grants Petitioner a certificate of appealability.

### iii. Ground Three

Petitioner asserts his "[a]ppellate [c]ounsel was ineffective for failure to argue that [the] [t]rial [c]ourt failed to rule upon the Petitioner's Motion for New Trial rendering the [d]irect [a]ppeal in this case premature or the [d]irect [a]ppeal should have been held in [a]beyance." ECF No. [23] at 10. Petitioner fails to explain what grounds were alleged in his Motion for New Trial and what prejudice he faced on appeal; however, in Ground Four Petitioner explains that his trial counsel filed a Motion for New Trial alleging judicial vindictiveness and challenging the sufficiency of the evidence. *See id.* at 12.

The record shows that Petitioner raised a sufficiency of the evidence challenge in Point I of his initial brief on direct appeal. *See* ECF No. [9-1] at 57. In other words, the timing of the trial court's ruling on the Motion for New Trial is of no consequence because his sufficiency of the evidence arguments were considered on direct appeal. As explained below in the Court's analysis of Ground Four, Petitioner's claims of judicial vindictiveness are meritless. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit.") (cleaned up). Thus, Ground Three is denied under the performance and prejudice prongs of *Strickland*, 466 U.S. at 687–88.

### iv. Ground Four

Petitioner claims his appellate counsel was ineffective for failing to argue his life sentences for first degree felony murder were judicially vindictive due to his rejecting a favorable plea offer. *See* ECF No. [23] at 12. At sentencing, the trial judge stated as follows:

> As the Judge in the case, I'm tasked with following what the law is, and the law in itself, good, bad or indifferent, is enacted by the Legislature, and certainly up to this point is one that's been deemed appropriate and constitutional. Now, if at a later point the reviewing court or the Florida Supreme Court says otherwise, then you'll derive the benefit from that because your lawyer has successfully, I believe, preserved that issue. But right now I'm here tasked with imposing the sentence in this case, and, as I had mentioned at the very beginning of this process, notwithstanding your involvement in the case, which I think we all agree was not a significant involvement, I am mandated to sentence you to life in prison.

ECF No. [10-2] at 864:7–22. Petitioner claims judicial vindictiveness based on the trial judge sentencing him to the statutorily mandated sentence after being convicted by a jury at trial. In other words, he argues the trial judge acted vindictively by following the law. This claim is meritless, and so appellate counsel cannot be deemed ineffective for failing to raise to it. *See Nyhuis*, 211 F.3d at 1344. Thus, Ground Four is denied under the performance and prejudice prongs of *Strickland*, 466 U.S. at 687–88.

### v. Ground Five

Petitioner contends his appellate counsel was ineffective for failing to argue "actual innocence" as to felony murder because the Broward County Sheriff's Office ("BSO") "willfully disregarded their own policies and procedures when engaging unlawfully in a high speed chase[.]" ECF No. [23] at 14. Ground Five is premised on Petitioner's mistaken belief that BSO's failure to follow its own policies and procedures equates to his actual innocence. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[A]ctual innocence means factual innocence, not mere legal insufficiency."). Because Petitioner's claim is meritless, appellate cannot be deemed ineffective

for failing to raise to it. *See Nyhuis*, 211 F.3d at 1344. Moreover, Petitioner's trial counsel stated as follows in closing argument:

> [I]n the words of at least three officers, BSO internal policy had been violated. This was a non-violent felony, the rules are specific, you do not go on a high speed chase after a non-violent felon, especially when you got the other guy under arrest. They violated their own rules, they continued the chase.
>
> Now, they reach this intersection, and unlike what happened with the traffic control device in the Rock Creek neighborhood, in other words, the stop sign Mr. Oakley didn't stop this time he ran through it. What was he running from? He was running from the police. He had already left the scene, there was a break. Mr. Oakley acted independently, there was an independent act. You have the instruction.

ECF No. [10-2] at 820:2–17. Accordingly, trial counsel cannot be deemed ineffective for failure to make an argument that he did, in fact, make. *See e.g. Marrett v. Sec'y, Fla. Dep't of Corr.*, 2022 WL 17752375, at *5 (S.D. Fla. Dec. 19, 2022) ("Counsel cannot be deemed ineffective for failing to act when, in fact, he did act."). Ground Five is thus denied under the performance and prejudice prongs of *Strickland*, 466 U.S. at 687–88.

### vi. Ground Six

Petitioner asserts his appellate counsel "was ineffective for failing to argue the trial court erroneously denied mistrial after coercing the petitioner to waive a mistrial because the petitioner had demanded speedy trial." ECF No. [23] at 16. This ground is identical to Ground Eleven, although here, it is raised under the guise of ineffective assistance of appellate counsel. For the reasons explained below in Ground Eleven, Petitioner's claim is meritless and therefore appellate counsel cannot be deemed ineffective for failing to raise to it. *See Nyhuis*, 211 F.3d at 1344. Ground Six is thus denied under the performance and prejudice prongs of *Strickland*, 466 U.S. at 687–88.

### vii. Ground Seven

Petitioner claims his counsel was ineffective in failing to argue his plea to the burglary

charges was involuntary and unknowingly entered as counsel did not advise him about the effects of his plea during trial for felony murder. *See* ECF No. [23] at 17–21. Petitioner's claim is refuted by the record. In opening argument, Petitioner's counsel stated:

> Sadik Baxter is not guilty of felony murder in the first degree. There is only one person responsible for the deaths of Christopher McConnell and Dean Amelkin, and that person is O'Brian Oakley. When these two men were killed, Mr. Baxter was in custody, in handcuffs, in the back of a police car. He is sitting here before you because of the independent decision and the independent action of O'Brian Oakley.
>
> Now, Mr. Baxter is guilty, he is guilty of and he has taken responsibility for the five burglaries that occurred that morning of August 5, 2012, but he is not responsible for those deaths.

ECF No. [10-2] at 330:4–17. This argument was repeated in closing. *See id.* at 812–13. The record shows that Petitioner entered a knowing and voluntary plea to the burglary charges; however, his plea was also used as part of a trial strategy to separate himself from the actions of his co-defendant. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). The Court finds Petitioner's solemn declarations veritable and his contentions in Ground Seven wholly incredible in the face of the record. *See id.* Ground Seven is thus denied.

### viii. Ground Eight

Petitioner claims the trial court committed error in failing "to conduct a competency hearing to ensure that Petitioner was competent to proceed[.]" ECF No. [23] at 21. Petitioner's claim is based on Florida law and procedure regarding competency. *See id*. As such, it is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Ground Eight is thus denied.

### ix. Ground Nine

Petitioner claims his trial counsel failed to protect his right to be tried by an impartial jury. *See* ECF No. [23] at 23. He cites several issues during voir dire as grounds. *See id.* However, Petitioner's claims are refuted by the record. The trial judge conducted the following colloquy with Petitioner:

THE COURT: Mr. Baxter, is this the jury that you want to decide your case?

THE DEFENDANT: Yes, sir.

THE COURT: Have your lawyers explained everything to you?

THE DEFENDANT: Yes sir.

THE COURT: Answered all your questions?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had enough time to talk about it?

THE DEFENDANT: Yes, sir.

THE COURT: And this is the jury you want to decide your case?

THE DEFENDANT: Yes, Sir.

THE COURT: All right.

ECF No. [10-2] at 252:20–25, 253:1–8. The record shows that Petitioner was twice asked by the trial judge whether this was the jury he wanted to decide his case. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). The Court finds Petitioner's solemn declarations veritable and his contentions in Ground Nine wholly incredible in the face of the record. *See id.* Ground Nine is thus denied.

### x. Ground Ten

Petitioner claims his trial counsel was ineffective for failing to object to the admission of unduly prejudicial photographs showing "the victims['] body parts, blood and the gruesome scene of [the] unfortunate accident[.]" ECF No. [23] at 27. Petitioner raised this claim in his Rule 3.850 motion which was denied by the trial court and affirmed by the Fourth District Court of Appeal. *See Baxter v. State*, 314 So. 3d 268 (Fla. 4d DCA 2021). Having reviewed the record in full, the Court finds nothing unreasonable with the state courts' rejection of this claim. *See Wilson*, 138 S. Ct. at 1192 (requiring a federal court sitting in habeas to defer to "reasonable" reasons given by the state court in rejecting a claim for relief). Simply put, the photographs were admissible and so Petitioner's trial counsel cannot be deemed ineffective for failing to make a meritless objection. *See Chandler*, 240 F.3d at 917. Ground Ten is thus denied under the performance and prejudice prongs of *Strickland*, 466 U.S. at 687–88.

### xi. Ground Eleven

Petitioner argues that the trial court erred in "denying mistrial after coercing [Petitioner] to waive a mistrial because [Petitioner] demanded speedy trial." ECF No. [23] at 29. Because Petitioner demanded a speedy tria,l his counsel was unable to complete all of the depositions and learned during the course of the trial that "witness James Bolger, a retired firefighter/battalion chief, who testified to the horrific scene of the car accident that unfortunately took the life of the two victims, was indeed their best friend who he knew all his life and that his daughter is an Assistant State Attorney for Broward County State Attorney's Office." *Id.*

First, Petitioner incorrectly claims that the trial court coerced him to waive a mistrial. Rather, the trial court considered and rejected Petitioner's motion for a mistrial, concluding that recusal of the Broward State Attorney's Office was not warranted. *See* ECF No. [10-2] at 766–68.

Second, the daughter of the witness that Petitioner mentions was not prosecuting the case. *See id.* Having reviewed the record in full, the Court agrees with the trial court that recusal of the Broward County State Attorney's Office was not warranted. Thus, there was nothing unreasonable with the trial court's denial of a mistrial. *See Wilson*, 138 S. Ct. at 1192. Accordingly, Ground Eleven is denied.

### xii. Ground Twelve

Petitioner claims his trial counsel was ineffective for not moving to suppress the "unduly prejudicial video" of Petitioner's "interrogation by detectives." ECF No. [23] at 31. Petitioner raised this claim in his Rule 3.850 motion which was denied by the trial court and affirmed by the Fourth District Court of Appeal. *See Baxter v. State*, 314 So. 3d 268 (Fla. 4d DCA 2021). Having reviewed the record in full, the Court finds nothing unreasonable with the state courts' rejection of this claim. *See Wilson*, 138 S. Ct. at 1192. Strategic choices—such as whether to file a certain motion—are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91. Ground Twelve is thus denied under the performance and prejudice prongs of *Strickland*, 466 U.S. at 687–88.

### xiii. Ground Thirteen

Petitioner claims his "convictions evince violation of Mr. Baxter's 5th, 6th, and 14th amendment [rights], due process, and U.S. Constitutional rights, due to newly discovered DNA evidence obtained by the State Attorney's Office[.]" ECF No. [23] at 36. Petitioner raised this claim in his Rule 3.850 motion which was denied by the trial court and affirmed by the Fourth District Court of Appeal. *See Baxter v. State*, 314 So. 3d 268 (Fla. 4d DCA 2021). In its response to Petitioner's Rule 3.850 motion, the State outlined the procedural history of the *Brady* Notice filed by their office:

> Defendant filed the instant Motion as a claim of newly discovered evidence in response to the Brady Notice sent by the State Attorney's Office on or about

> October 10, 2016, pursuant to Rule 3.220(b)(4), Florida Rules of Criminal Procedure, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The notice provided the American Society of Crime Laboratory Directors/Laboratory Accreditation Board notified the Broward Sheriffs Office on April 12, 2016, there was, "(I)nappropriate use of the statistic known as the Combined Probability of Inclusion (CPI) to calculate statistical significance of occurrence of genetic profiles when allelic dropout is known and/or suspected to have occurred." The notice further provided the CPI calculations were "only used by the BSO DNA Crime Lab in complex DNA mixture cases," (Exhibit A, Brady Notice).
>
> The Brady Notice at issue is generic, and the State filed it in all DNA cases without first determining if it applied to any particular defendant's case, including this case. The notice only provided there may have been DNA evidence in this matter, and if there was such evidence, there was not a determination CPI calculations were utilized (See Exhibit A).
>
> Further, as noted above, the Brady Notice only applies in DNA cases in which there was a complex mixture, and where the Broward Crime Laboratory analyst opined by testimony in trial, or in a report or deposition before and/or at the time of plea or trial, on the probability of the statistical occurrence of a defendant's DNA profile to the DNA samples collected, specifically using the CPI method. The notice did not indicate any problem existed in the actual DNA analysis by the Broward Crime Laboratory analyst or by any independent analyst or lab, and no such problem is suspected or indicated. The notice also does not apply to cases in which a person other than a Broward Crime Laboratory analyst testified on the probability of the statistical occurrence of a defendant's DNA profile to the DNA samples collected, regardless of the statistical method used.
>
> Accordingly, the Brady Notice is strictly limited to the Broward Crime Laboratory analyst, and no other entities, who testified in trial, or who submitted a written report or provided deposition testimony before and/or at the time of plea or trial, regarding complex mixtures based only on statistical probability specifically using the CPI method of calculation. The Brady Notice does not apply to a case if any one of these variables is missing.

ECF No [9-5] at 3–4. In its Response, Respondent explains that: "Petitioner's DNA was not found in the co-defendant's vehicle. It was not even determined to be part of a mixture of any DNA analyzed in this case. Accordingly, the 2016 *pro forma* notice Petitioner received had no bearing on his case." ECF No. [25] at 90. The Court agrees with Respondent. Thus, having reviewed the record in full, the Court finds nothing unreasonable with the state courts' rejection of this claim.

*See Wilson*, 138 S. Ct. at 1192. Accordingly, Ground Thirteen is denied.

### B. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the pertinent facts of the case are fully developed in the record. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

### C. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court grants a certificate of appealability on Ground Two and denies a certificate of appealability on all other grounds.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus

CASE No. 21-cv-62301-BLOOM

by a Person in State Custody, **ECF No. [23]**, is **DENIED**.

2. A certificate of appealability on Ground Two is **GRANTED**. A certificate of appealability on all other grounds is **DENIED**.

3. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 25, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Sadik Baxter
M81116
Okaloosa Correctional Institution
Inmate Mail/Parcels
3189 Colonel Greg Malloy Road
Crestview, FL 32539
PRO SE